UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONIQUE ORIEUX,<br>on behalf of herself and others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CERTAINTEED CORPORATION,<br><br>　　　　　　　　Defendant. | Case No.: _____<br><br><br>CLASS ACTION COMPLAINT<br>AND<br>JURY DEMAND<br><br>(Equitable Relief Sought) |

　　　　1.　　　Plaintiff Monique Orieux on behalf of herself and others similarly situated ("the Class"), by and through her undersigned counsel files this Class Action Complaint as to the above-captioned matter, and in support thereof states and avers as follows:

**NATURE OF ACTION**

**A. Background**

　　　　2.　　　This is a consumer class action against CertainTeed Corporation ("CertainTeed") on behalf of all persons and entities who owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, on which CertainTeed WeatherBoards FiberCement exterior siding products containing fly ash "Siding" are or have been installed since 2002 to the present.

　　　　3.　　　CertainTeed sold or distributed Siding throughout the United States for installation on homes, commercial buildings, and other structures.  The Siding is or was

installed on Plaintiff's home and other structures, and is or was installed on the homes and structures of Plaintiff and the Class.

4.      Prior to 2002, CertainTeed designed, manufactured, and distributed the Siding using grain and silica sand as core materials.  Upon information and belief, CertainTeed changed its design and/or formula in or around 2002 and began to use fly ash instead of grain and silica in its Siding. Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by CertainTeed lowered the cost of concrete utilized in the manufacture of the Shingles.  However, the defective change in design and/or formulation resulted in water absorption, porosity problems, and other uniform defects alleged herein— none of which were inherent in the grain and silica sand design formulations.

5.      CertainTeed markets and warrants its Siding as durable, and as offering long-lasting protection for a specified life of 50 years.  The industry and consumers appropriately rely on the warranty and marketing nomenclature to mean a product with a 50-year warranty is expected to have a usable lifetime of 50 years.

6.      CertainTeed's sales brochures and marketing literature regarding Siding, which were widely distributed to building professionals who installed Siding and generally available to Plaintiff and the Class at the time of sale, state, among other things, "Each and every sheet and board is engineered for decades of superior protection, wear and durability and is backed with a century-long tradition of excellence and customer satisfaction," and "When we say CertainTeed, we mean quality made certain, satisfaction guaranteed." (emphasis in original). CertainTeed further represents that its Siding "LASTS LONGER" and "OUTPERFORMS THE OTHERS."  Specifically, CertainTeed claims that its Siding has superior freeze/thaw protection, protects against damaging moisture, and resists everyday bumps and harmful

impacts.   (*See* **Exhibit A**.)   CertainTeed's Siding has not lived up to CertainTeed's representations and, given the early and severe deterioration that requires unexpected maintenance and premature repair and replacement, has not proven to be of value when compared to other siding products.

7.     Although CertainTeed widely advertises that its Siding carries a 50 year warranty, the company does not make the specific terms of the warranty readily available to customers before or at the time of purchase. Plaintiff received a copy of the warranty only after contacting CertainTeed to make a claim.

8.     CertainTeed represented to Plaintiffs and the Class in documents generally available to the public that its Siding would last for 50 years without problems, or the company would remedy the situation. CertainTeed made this representation before purchase and at the time of purchase via sales brochures and marketing materials (including but not limited to store displays, sales seminars, and training materials).

9.     Upon information and belief, CertainTeed learned that the addition of fly ash into its Siding caused water absorption and porosity problems.  As the Siding goes through repeated freeze-thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product. Excessive expansion and contraction of Shingles leads to the uniform defects alleged herein.

10.     The Siding manufactured and sold by CertainTeed is defectively designed and manufactured such that it prematurely fails, causing damage to the underlying structures and other property of Plaintiff and members of the Class and lowers the value of the property. The Siding is non-conforming.

11. The defects present in CertainTeed Siding are so severe that Plaintiff and members of the Class must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased CertainTeed's siding product specifically.

12. All of CertainTeed's Siding is uniformly defective such that Plaintiff's and Class members' Siding is failing before the time periods advertised, marketed, and guaranteed by CertainTeed or otherwise expected by ordinary consumers purchasing siding.

13. CertainTeed knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely due to moisture invasion or other defects. The outward manifestation of the Siding deterioration and deformation is cracking, warping, discoloration, and product shrinkage. At the extreme, the Siding breaks and falls off the structure. In short, the Siding does not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as building products.

14. The following photos, attached hereto in thumbnail form and in full as **Exhibit B**, are a sampling of the problems Plaintiff and has experienced with her CertainTeed Siding:

 

 

**B. CertainTeed's On-going Refusal to Notify Its Customers of the Defects Associated With Its Siding**

15.     Upon information and belief, CertainTeed has received thousands of warranty claims alleging a manufacturing or design defect in the Siding.  Upon information and belief, some of these warranty claims have been improperly rejected and other of the warranty claims have been settled in a manner not strictly consistent with the warranty terms.

16.     Despite receiving a litany of complaints from consumers, such as Plaintiff and other members of the Class, CertainTeed has refused to convey effective notice to consumers about the defects, and refused to fully repair damage caused by the premature failure of its product.

17.     The following represents a small sampling of Internet postings by CertainTeed Siding purchasers and installers' general frustrations with the defective Siding [*sic* throughout]:

    a.          "We noticed several small cracks in our siding (probably about 8), within about 20 months of our build. Unfortunately we did not report them immediately and Certainteed would only replace the boards. So we have the boards (enough to

reside the whole section) but have to pay for the labor on our own…"
(http://ths.gardenweb.com/forums/load/build/msg0623391229111.html.)

b. "The product is shrinking at the seams over 1/2". I used the water diverters
and they are now visable. The builder specs a pre-finished product therefore I am
unable to caulk the seams. Also the nails were pulling thru the product. After close
review we found the nailing to be per spec. (flush nailing) We are thinking the
product was absorbing too much moisture and froze during the winter months,
making the product weak. Since we have had these problems Certainteed has re-
formulated the product and added more flyash to the panel."
(http://www.contractortalk.com/f33/hanging-certainteed-cement-siding-31865/.)

c. "Our company installed 25 sq. of Certinteed Fiber Cement Siding on a
house April of 2006 and 3 month later we had chalking and discoloration
problems that had to be repaid at our expence. At that time a represenitive told us
it was an excelent job of installing. 9 months later we more discoloration and
shrinkage at end joints, bottom of boards cupping out, and boards cupping
between studs 16"o.c. We contacted or supplier and ask to file a warrenty claim
they contacted Certinteed and they sent a Rep. out to look at the siding. A few
days later they responded with a letter and said it was basicly a installation
problem or a moister problem from a bad roof, or poor bath room or kitchen
ventilation. We had installed Hardi Fiber Cement Siding on a house before this
one and one house after this house with the same cutting and nailing system with
no problems. You tell me if Certieed dosen't have a product problem." (*Id.*)

18.     CertainTeed's response to customers' warranty submissions and other requests for assistance and compensation is woefully inadequate under these circumstances in that it limits Plaintiff's and Class members' recovery to replacement costs of individual boards of Siding piece by piece and excludes costs of labor to replace the Siding for the last 48 years of the warranty.

**E. CertainTeed's Acts and Omissions Have Damaged Plaintiff and the Class**

19.     As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages. The Siding on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by CertainTeed, and the time warranted by CertainTeed, resulting in and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Siding into their homes, buildings, and other structures, and to prevent such damage from continuing.

20.     Upon information and belief, CertainTeed has engaged in a uniform practice of denying warranty claims through a system of obfuscating form letters that misrepresent the defective nature of CertainTeed Siding. Specifically, CertainTeed's agents represent that the defects alleged herein constitute normal wear and tear or were installation-related problems.

21.     CertainTeed's uniform representations to Plaintiff and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiff and the Class. Such representations serve to conceal the true nature of CertainTeed's defective Siding.

22.     At all relevant times, CertainTeed had a duty to disclose to Plaintiff and the Class that is Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

23.     Because the defects in the Siding are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Siding was defective until after installation, despite the exercise of due diligence.  Indeed, at the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Siding to their own testing, modeling, or analysis.

24.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against CertainTeed on their own.  This is especially true in light of the size and resources of CertainTeed and its parent corporation, Saint-Gobain.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from this Defendant.

25.     The Siding manufactured and sold by CertainTeed is defectively designed and manufactured such that it fails prematurely, causing damage to the property of Plaintiff and members of the Class and forcing them to repair or replace their siding sooner than reasonably expected, than marketed, and than warranted.

26.     Plaintiff seeks to recover, for herself and the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring CertainTeed to replace their defective Siding and modify their warranty claims process to uniformly provide relief in accordance with its obligations under the law.

## PARTIES

### A. Monique Orieux

27.     At all relevant times Plaintiff and class representative Monique Orieux was a resident and citizen of Minnesota, residing in Ramsey, Minnesota.

28.     Ms. Orieux hired United Building Centers ("UBC") to install CertainTeed WeatherBoards Siding on her Minnesota vacation home and two other structures on the property; installation began in November 2004 and completed in February 2005. Ms. Orieux paid $19,509.65 for materials and labor.  Ms. Orieux did not receive a copy of CertainTeed's warranty prior to or at the time of installation.

29.     The primary reason Ms. Orieux purchased CertainTeed Siding instead of another product is because it came with a 50-year warranty, which she learned about through advertisements for the product.

30.     Ms. Orieux constructed a fourth structure on her property in July 2005 and sided the structure with CertainTeed Siding in the summer of 2005. She paid $3,749.56 for materials. During the installation, she noticed discoloration and shrinkage in Siding installed in 2004-2005. Ms. Orieux did not know that her Siding was defective at this time. She immediately contacted UBC to seek relief, but the lumber yard refused to remedy the problem and did not inform Ms. Orieux of CertainTeed's warranty requirement that she report the problem to CertainTeed within two years of installation in order to receive full compensation.

31.     In April 2008, Ms. Orieux submitted a warranty claim to CertainTeed; she did not learn that CertainTeed required completion of a lengthy claim form until shortly before submitting it to the company.

32.     CertainTeed scheduled an inspection of Ms. Orieux's home for June 30, 2008. Ms. Orieux requested to be present at the inspection so that she could identify the problem areas. However, CertainTeed inspected the home two days earlier than scheduled—on June 28, 2008—without notifying Ms. Orieux (who was not present at the time because the property is not her full-time residence).

33.     CertainTeed admitted that its inspection identified several boards of Siding that did not meet quality standards, and agreed to replace those specific boards. However, CertainTeed refused to pay for the labor to remove, dispose of, and replace the problem boards. CertainTeed disclaimed any liability for the discoloration of the boards; however, it provided eight gallons of cleaning solution to remove efflorescence (crusty, white salt deposits, leached from the FiberBoard as water passes through it) and labor to apply the solution. The cleaning solution was only a temporary fix for the mineral deposits, but did not substantially improve the discoloration problem.

34.     Plaintiff has been in continual contact with CertainTeed regarding its defective Siding; however, the company has failed to honor its 50-year warranty by replacing Plaintiffs' Siding.

35.     Plaintiff did not discover that her Siding suffers from a defect until shortly before filing this Complaint. In fact, she discovered the defect only by conducting her own investigation into the design and manufacture of CertainTeed's Siding in early 2009.

**B. CertainTeed**

36.     Defendant CertainTeed Corporation is a corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed

is a leading North American manufacturer of building materials including roofing, siding, insulation, windows and patio doors, fence, decking, railing, foundations, and pipe.  The company has approximately 7,000 employees and more than 40 manufacturing facilities throughout the United States.

37.     CertainTeed sells Siding throughout the United States.

38.     Upon information and belief, customer complaints and warranty claims made regarding CertainTeed Siding are processed in Pennsylvania.

39.     Upon information and belief, all marketing of CertainTeed Siding in the United States, including distribution of advertising as well as marketing and promotional materials, has been managed by offices in Pennsylvania.

## JURISDICTION AND VENUE

40.     Defendant CertainTeed is headquartered in Montgomery County, Pennsylvania and conducts substantial business in this District, including but not limited to the marketing and sale of Siding. This Court has jurisdiction over CertainTeed because it has intentionally availed itself to the markets and laws of the Commonwealth of Pennsylvania.

41.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the Plaintiff is a citizen of Minnesota and Defendant CertainTeed is a citizen of Pennsylvania. In addition, a vast majority of class members are citizens of a state different from the home state of Defendant, and, upon information and belief, the amount in controversy exceeds five million dollars ($5,000,000.00).

42.     Venue is proper in this district pursuant to 28 U.S.C. § 1961 *et seq.* because CertainTeed's principal place of United States business operations is located in Valley Forge, Pennsylvania, and as such resides within the district.

## CLASS ACTION ALLEGATIONS

43.     This action is brought and may be maintained as a nationwide class action

pursuant to Federal Rule of Civil Procedure 23, and case law there under, on behalf of

Plaintiffs and all others similarly situated, with the Nationwide Class defined as follows:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings, or other structures physically located
> in the United States, on which CertainTeed cement siding is or has
> been installed from January 1, 2002 to the present.  CertainTeed
> cement siding is defined as all siding manufactured or distributed
> by Defendant that contains fly ash. Excluded from the Class is the
> Defendant, any entity in which Defendant has a controlling interest
> or which has a controlling interest of Defendant, and Defendant's
> legal representatives, assigns and successors.  Also excluded are
> the judge to whom this case is assigned and any member of the
> judge's immediate family.

44.     Alternatively or in addition to the Nationwide Class claims, Plaintiff brings, as

applicable to each of the various states where the laws are similar to each of the states in

which a named Plaintiff resides, all causes of action under Federal Rule of Civil Procedure 23

on behalf of themselves and State Sub-Classes defined as:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings, or other structures physically located
> in the applicable State, on which CertainTeed cement siding  are or
> have been installed since 2002. CertainTeed cement siding is
> defined as all siding manufactured or distributed by Defendant that
> contains fly ash. Excluded from the Class are Defendant, any entity
> in which Defendant has a controlling interest or which has a
> controlling interest of Defendant, and Defendant's legal
> representatives, assigns and successors.  Also excluded are the
> judge to whom this case is assigned and any member of the judge's
> immediate family.

45.     Plaintiff reserves the right to re-define the Class(es) prior to class certification.

46.     While the precise number of Class members is unknown to Plaintiff, upon

information and belief, the number is well in excess of 1,000 and the Class likely includes

many thousands such that joinder is impracticable.  The true number of Class members is likely known by Defendant.  Disposition of these claims in single class action will provide substantial benefits to all parties and the Court.

47.    The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, and all Class members, own homes, residences, or other structures on which defective Siding manufactured by CertainTeed has been installed.  Those Siding boards have failed, and will continue to fail, prematurely.  The representative Plaintiff, like all Class members, has been damaged by CertainTeed's conduct in that she has incurred or will incur the costs of repairing or replacing her siding and repairing the additional property damaged by the Siding's premature failure.  Furthermore, the factual bases of CertainTeed's conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

48.    There are numerous questions of law and fact common to Plaintiff and the Class.  Those questions predominate over any questions that may affect individual Class members, and include the following:

  a. Whether CertainTeed Siding is defective in that it fails prematurely and is not suitable for use as an exterior building product for the length of time advertised, marketed, and warranted;

  b. Whether the Siding is defectively designed or manufactured;

  c. Whether CertainTeed knew or should have known of the defective nature of the Siding;

  d. Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.  Whether CertainTeed properly instructed consumers about the likelihood of premature failure;

f.  Whether the Siding fails to perform as advertised and warranted or expected by an ordinary consumer;

g.  Whether CertainTeed's conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive.

h.  Whether Plaintiff and the Class are entitled to compensatory, exemplary, and statutory damages, and the amount of such damages;

i.  Whether CertainTeed should be declared financially responsible for notifying all Class members about their defective Siding and for all damages associated with the incorporation of such Siding into Class members' homes, residences, buildings, and other structures; and

j.  Whether CertainTeed has changed or altered is warranty program without notice the Plaintiff and the Class.

49.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and specifically, actions involving defective construction materials.   Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the Class.

50.     Plaintiff and the members of the Class have suffered and will continue to suffer harm and damages as a result of CertainTeed's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for CertainTeed's conduct.  Further, the cost of litigation could well equal or exceed any recovery.  Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**<u>ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS</u>**

51.     CertainTeed knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff and the general public, while continually marketing the Siding as dependable products.  Defendant's acts of fraudulent concealment include failing to disclose that its Siding was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

52.     Because the defects in the Siding are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their

Siding was defective and unreliable until after installation, despite their exercise of due diligence.

53. Plaintiff had no reasonable way to discover this defect until shortly before Plaintiff filed this complaint.

54. Defendant had a duty to disclose that its Siding was defective, unreliable, and inherently flawed in its design and/or manufacture.

### FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

55. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

56. Defendant marketed and sold its Siding into the stream of commerce with the intent that the Siding would be purchased by Plaintiff and members of the Class.

57. Defendant expressly warranted that its Siding is well-suited as an outdoor siding material for a period of at least 50 years. Defendant's representatives through its written warranties regarding the durability and quality of the Siding created express warranties which became part of the basis of the bargain Plaintiff and members of the Class entered into when they purchased the Siding.

58. Express warranties created by CertainTeed go beyond the limited warranties CertainTeed relies upon. CertainTeed also creates express warranties by the Siding's brochures and marketing materials.

59. Defendant expressly warranted that the structural integrity of the Siding purchased by Plaintiff and Class members would last at least 50 years.

60.     Defendant breached its express warranties to Plaintiff and the Class in that Defendant's Siding did not, and does not, maintain its structural integrity and perform as promised.   Defendant's Siding cracks, splits, warps, discolors, falls off the structure, deteriorates prematurely, and otherwise does not perform as warranted by Defendant.

61.     Defendant's warranties fail their essential purpose because they purport to warrant that the Siding will be free from structural breakdown for at least 50 years when, in fact, Defendant's Siding falls far short of the applicable warranty period.

62.     Moreover, because the warranties limit Plaintiff's and Class members' recovery to replacement of the Siding piece by piece, with replacement labor not included, Defendant's warranties are woefully inadequate to repair and replace failed siding, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the product.   The remedies available in Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

63.     The limitations on remedies and the exclusions in Defendant's warranties are unconscionable and unenforceable.

64.     Defendant has denied or failed to pay in full the warranty claims or has not responded to warranty claims.

65.     As a result of Defendant's breach of its express warranties, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior siding product that is defective and that has failed or is failing prematurely due to moisture penetration and porosity problems.   This failure has required or is requiring Plaintiff and the Class to incur significant expense in repairing or replacing their

siding.   Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's and Class members' homes and structures.

66.   Plaintiff on behalf of herself and all others similarly situated, demand judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## SECOND CAUSE OF ACTION

**(Breach of Implied Warranties of Merchantability and
Fitness for a Particular Purpose)**

67.   Plaintiff incorporates by reference each of the allegations contained in all of the preceding paragraphs of this Complaint.

68.   At all times mentioned herein, Defendant manufactured or supplied CertainTeed Siding, and prior to the time said Siding was purchased by Plaintiff, Defendant impliedly warranted to Plaintiff, and to Plaintiff's agents, that the product was of merchantable quality and fit for the use for which it was intended.

69.   Plaintiff and Plaintiff's agents relied on the skill and judgment of the Defendant in using the Siding.

70.   The product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendant, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.   The Siding caused Plaintiff to sustain damages as herein alleged.

71.   The product was similarly unfit for its particular purpose.   CertainTeed manufactured its Siding in a cold weather climate, and distributed, marketed, and sold the Siding in cold weather climates.   CertainTeed knew, or should have known, that its Siding

18

would be subjected to sub-zero temperatures, snow, and sleet and that the Siding would be subjected to freeze-thaw cycles for a substantial period of each year.

72.     After Plaintiff was made aware of Plaintiff's damages as a result of the aforesaid product, notice was duly given to Defendant of the breach of said warranty.

73.     CertainTeed failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

74.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

75.     Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorneys' fees, interest, and costs.

<u>**THIRD CAUSE OF ACTION**</u>

**(Violation of Unfair Trade Practices and Consumer Protection Laws)**

76.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

77.     Defendant is a manufacturer, marketer, seller, and distributor of Siding.

78.     The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of §201-2(4),(v),(vii), and (xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter," UTPCPL"), 73 Pa.C.S.A. §201-1, *et seq.*

79.     The UTPCPL applies to all claims of all the Class members because the conduct which constitutes violations of the UTPCPL by Defendant occurred within the Commonwealth of Pennsylvania.  Moreover, CertainTeed's warranties direct class members to submit warranty claims to CertianTeed in Blue Bell, Pennsylvania, and CertainTeed directs all warranty work from its Blue Bell, Pennsylvania and Valley Forge, Pennsylvania offices.

80.     Plaintiff and other class members are consumers who purchased CertainTeed Siding for homes or other structures on which CertainTeed Siding was installed primarily for personal, family or household purposes within the meaning of 73 Pa.C.S.A. §201-9.2.

81.     Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of 73 Pa.C.S.A. §§201-2 and 201-3.  Such unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to the following:

a.  Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that person has sponsorship, approval, status, affiliation or connection that he does not have under §201-2(4)(v) (Defendant misrepresented and concealed material facts about the quality, uses, characteristics, and benefits of CertainTeed Siding);

b.  Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another under §201-2(4)(vii) (Defendant concealed material facts about the quality of the CertainTeed Siding);

     c.  Failing to comply with any written guaranty or warranty given to the buyer under §201-2(4)(xiv) (Defendant failed to comply with its express and implied warranties as set forth herein); and

     d.  Engaging in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding under §201-2(4)(xxi) (Defendant deceptively created the likelihood of confusion or misunderstanding about the quality of the CertainTeed Siding and Defendant's intention to honor its warranties with respect to the CertainTeed Siding).

82.    Defendant knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior Siding product, and otherwise was not as warranted and represented by Defendant.

83.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other members of the Class to be deceived about the suitability of CertainTeed's Siding for use as a long-lasting exterior home building product that would be backed by warranties of up to 50 years, and those warranties would in fact be honored by Defendant.

84.    Defendant intended that Plaintiff and Class members would rely on their misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the suitability, durability, and useful life of its defective Siding.

85.    Alternatively, Plaintiff seeks to recover for CertainTeed's unfair and deceptive acts of consumer fraud under the substantially similar Consumer Fraud and Deceptive Trade

Practices Act of the states in which Plaintiff and members of the Class reside, including but not limited to Minn. Stat. §§ 325.67, 325F.69, 325D.13, 325D.45.

86.     CertainTeed's conduct and omissions described herein repeatedly occurred in CeratinTeed's trade or business and were capable of deceiving a substantial portion of the consuming public.

87.     The facts concealed or not disclosed by CertainTeed are material facts in that Plaintiff and any reasonable consumer would have considered those facts important in deciding whether to purchase the Siding or purchase homes or structures constructed with the Siding.   Had Plaintiffs and the Class known the Siding was defective and would fail prematurely they would not have purchased the Siding or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different siding.

88.     Defendant intended that Plaintiff and the Class would rely on the deception by purchasing its siding, unaware of the undisclosed material facts.   This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

89.     CertainTeed's unlawful conduct is continuing, with no indication that CertainTeed will cease.

90.     Plaintiff and other members of the Class have been damaged as a proximate result of CertainTeed's violations of Pennsylvania's (and other states') Unfair Trade Practices and Consumer Protection Law and suffered actual, ascertainable losses and damages by virtue of having purchased defective Siding.

91.     As a direct and proximate result of CertainTeed's violations of the Unfair Trade Practices and Consumer Protection laws as set forth above, Plaintiff and Class

Members have suffered and continue to suffer an ascertainable loss of money and are therefore  entitled to relief, including damages, plus triple damages, costs and attorney fees under UTPCPL §201-9.2 or the substantially similar Consumer Fraud and Deceptive Trade Practices Acts of the home states of Plaintiffs and Class.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Negligence)

92.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

93.     Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

94.     Defendant breached its duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

95.     Defendant knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendant.

96.     As a direct and proximate cause of Defendant's negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes, residences, buildings, and other structures an exterior siding product that is defective and that fails prematurely due to water absorption, porosity problems, moisture penetration and other inherent defects.  On information and belief, the defect causes damage to Class members' existing homes, residences, buildings, and other structures, in addition to damage to the siding

itself, by allowing moisture to enter through the siding.  These failures have caused and will continue to cause Plaintiff and the Class to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

97.     Plaintiff on behalf of herself and all others similarly situated, demands judgment against Defendant for compensatory damages for themselves and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Unjust Enrichment)

98.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

99.     Substantial benefits have been conferred on Defendant by Plaintiff and the Class by purchasing CertainTeed Siding, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

100.     CertainTeed either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the CertainTeed Siding would perform as represented and warranted.  For CertainTeed to retain the benefit of the payments under these circumstances is inequitable.

101.     Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to the Plaintiff and the Class.

102.     Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

103.        As a direct and proximate result of CertainTeed's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by CertainTeed, plus attorneys' fees, costs, and interest thereon.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

**(Declaratory and Injunctive Relief brought by Plaintiff on behalf of herself and others similarly situated)**

104.        Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

105.        Plaintiff on behalf of herself and putative Class members, seeks a Court declaration of the following:

a.  All Defendant's Siding manufactured from 2002 until the present has defects which cause it to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Siding;

b.  All Defendant's Siding manufactured from 2002 until the present has a defect in workmanship and material that causes failures;

c.  Defendant knew of the defects in its Siding and that the limitations contained in its purported limited warranties are unenforceable;

d.  Defendant shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.  Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to inspect,

upon request, a Class member's structure to determine whether a Siding failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the Court to enter judgment against CertainTeed, as follows:

A.      Enter an order certifying the proposed Class (and subclasses, if applicable) pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), designating Plaintiff as the named Class Representative of the Class, and designating the undersigned as Class Counsel;

B.      Declare that CertainTeed is financially responsible for notifying all Class members of the problems with CertainTeed products;

C.      Enter an order enjoining CertainTeed from further deceptive advertising, marketing, distribution, and sales practices with respect to CertainTeed products, and requiring CertainTeed to remove and replace Plaintiff's and Class members' Siding with a suitable alternative siding of Plaintiff's and Class members' choosing;

D.      Enter an award to Plaintiff and the Class that includes compensatory, exemplary, or punitive damages as allowed by Pennsylvania law or other law, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.      Declare that CertainTeed must account and disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of CertainTeed materials, or order CertainTeed to make full restitution to Plaintiffs and the members of the Class;

F.      Enter an award of attorneys' fees and costs, as allowed by statute and law;

G.      Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

H.      Grant Plaintiff and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

I.      Grant such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the members of the Class hereby demand a trial by jury of any and all issues in this action so triable.

Dated: January 13, 2011    _____

Charles E. Schaffer
Arnold Levin
LEVIN FISHBEIN SEDRAN
& BERMAN
Suite 500
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500
(215) 592-4663 (fax)

Robert K. Shelquist                     Clayton D. Halunen
LOCKRIDGE GRINDAL NAUEN PLLP            Shawn J. Wanta
Suite 2200                              HALUNEN & ASSOCIATES
100 Washington Avenue South            1650 IDS Center
Minneapolis, MN 55401                  80 South Eighth Street
(612) 339-6900                          Minneapolis, MN 55402
(612) 339-0981 (fax)                    (612) 605-4098
                                        (612) 605-4099 (fax)

Michael A. McShane                      Charles J. LaDuca
AUDET & PARTNERS, LLP                   Brendan S. Thompson
221 Main Street, Suite 1460            CUNEO GILBERT & LADUCA, LLP
San Francisco, CA 94105                507 C Street, NE
(415) 568-2555                          Washington, DC 20002
(415) 576-1776                          (202) 789-3960
                                        (202) 789-1813 (fax)

## ATTORNEYS FOR THE NAMED PLAINTIFF